UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Richard E. Copp,

    Plaintiff,

v.                                                        Case No. 07-11195

Mutual of Omaha Insurance Company,        Honorable Sean F. Cox

    Defendant.
_____/

## OPINION & ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this action, Plaintiff alleges that his former employer discriminated against him on the basis of his age. The matter is currently before the Court on Defendant's Motion for Summary Judgment. The parties have fully briefed the issues and the Court heard oral argument on April 17, 2008. For the reasons below, the Court shall GRANT the motion because Plaintiff has not established a prima facie case of age discrimination and, even if he could do so, he cannot show that Defendant's legitimate, nondiscriminatory reason for his termination was a pretext for age discrimination.

BACKGROUND

Plaintiff's complaint contains the following three counts: "ADEA-Nonwilful" (Count I); "ADEA-Willful" (Count II); and "Claims Under Title VII of the Civil Rights Act of 1964, as Amended by the Civil Rights Act of 1991" (Count III). While the specific factual allegations in Plaintiff's complaint all appear to allege age discrimination, Count III of Plaintiff's complaint also references "acts of race, sex, national origin" discrimination. (Compl. at ¶ 37). At the April

1

17, 2008 hearing, Plaintiff's counsel confirmed that the only claim Plaintiff asserts in this action is an age discrimination claim under the ADEA. Thus, to the extent that Plaintiff's complaint alleges any other claims, Plaintiff agrees that those claims should be dismissed. Thus, Plaintiff's age discrimination claim is the only claim that needs to be analyzed in ruling on Defendant's Motion for Summary Judgment.

This Court's practice guidelines for motions for summary judgment provide, in pertinent part, that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. The Statement shall include all necessary material facts that, if undisputed, would result in summary judgment for the movant.
>
> b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.

In compliance with this Court's practice guidelines, Defendant submitted a Statement of Material Facts Not In Dispute ("SMF") and Plaintiff submitted a Counter Statement of Disputed Facts ("CSDF").

Plaintiff Richard "Hub" Copp ("Plaintiff") began working for Defendant in March 1996, as a sales representative in its Detroit District office. Defendant's Detroit office sells group insurance products to insurance brokers. Thus, Defendant's customers are insurance brokers. (Pl.'s Br. at 3; Def.'s Br. at 2).

The territory serviced by Defendant's Detroit office included the entire State of

Michigan, Toledo, Ohio, and a broker in northeast Indiana.

According to Plaintiff, he had to work extremely hard to cover this territory and had to work nights and weekends because there was too much work for one person. (SMF and CSDF at ¶ 8).

In April 1998, Plaintiff became the district manager for the Detroit office. (SMF and CSDF at ¶ 11). As a district manager, one of Plaintiff's responsibilities was to hire and develop sales representatives. (*Id*. at ¶ 13). During his tenure, Plaintiff hired three sales representatives, in addition to one other sales representative who had been hired by his predecessor. However, all of those other sales representatives left the Detroit office. (*Id*. at ¶ 14).

Plaintiff ultimately agreed to step down as manager, effective April, 2004. (*Id*. at ¶ 19; *see also* Def.'s Exhibit No. 5). Allan Cotter ("Cotter"), who is about the same age as Plaintiff, replaced Plaintiff as the district manager. (SMF and CSDF at ¶ 20). During Cotter's tenure as district manager, Plaintiff spoke negatively about him to Springer, telling Springer that Cotter "wasn't pulling his weight," and that he "was abusing the system." (*Id*. at ¶ 21).

Cotter resigned in Spring, 2005. (*Id*. at ¶ 24). Springer hired Todd Covert ("Covert"), who was 31 years old and had previously worked at SunLife, to be the next district manager, starting in September, 2005. (*Id*. at ¶ 25).

Plaintiff acknowledges that Defendant was trying to grow the business in the Detroit office, become more profitable, and be more aggressive; that it was hiring more sales representatives ("sales reps"); and that in hiring more sales reps, who needed a territory to get started, Defendant had to divide up the territories of the existing sales reps. (*Id*. at ¶ 8).

Shortly after hiring Covert, Springer had a discussion with Plaintiff wherein Springer

emphasized to Plaintiff that Plaintiff needed to support Covert, needed to support the addition of new sales representatives, and needed to support the division of territories. (*Id.* at ¶ 26; Plaintiff's Dep. at 136-37). Plaintiff testified that he told Springer he would provide such support to Covert. (*Id.*)

Nevertheless, it is undisputed that Plaintiff challenged management regarding territory changes. (*See e.g.*, Pl.'s Dep. at 146). Plaintiff also acknowledged that, after management had made changes in territories, Plaintiff asked a broker to intercede on his behalf with management in order to keep their business. (Pl.'s Dep. at 144-45).

In November of 2005, Senior Vice-President Scott Ault ("Ault") traveled to the Detroit office and gave Plaintiff a verbal warning regarding his behavior. (SMF and CSDF at ¶ 29). Plaintiff testified that he was given that verbal notice and that Ault told Plaintiff that he had to support Covert. (Pl.'s Dep. Tr. at 138 & 144). Plaintiff further testified that Ault outlined his expectations for Plaintiff, which included: displaying positive workplace behaviors; being supportive of management decisions and changes, which are made in order to support the growth of the Detroit office; and working collaboratively and professionally with other team members. (Pl.'s Dep. Tr. at 144-48).

Plaintiff agrees that his position required that he embrace the need for change, required that he project a positive image to the market, and required him to demonstrate support and cooperation within the Detroit office environment. (Pl.'s Dep. Tr. at 142).

Plaintiff's Performance Review for 2005 (Exhibit 7 to Def.'s Brief) indicated that Plaintiff's overall evaluation was "B," which indicates "does not fully meet requirements. Attention required." (*Id.*).

With respect to performance expectations relating to work habits, Plaintiff was rated "I," which means "immediate improvement required." The comments in this section stated "Hub has often stated that he is looking out for himself with brokers and protecting his best interests. Hub has not provided a positive attitude within the office or the brokerage community." (Ex. 7 to Def.'s Br.). Plaintiff testified that he did tell Covert that he was looking out for himself with brokers and protecting his best interests. (Pl.'s Dep. Tr. at 125-26). Plaintiff also admitted that he had told people in the "brokerage community" that he was displeased with Covert and that people in the Detroit office could "probably tell" that Plaintiff was displeased with the changes that management was making. (*Id*. at 126-27).

With respect to performance expectations relating to interpersonal skills, Plaintiff was also rated as "I." (Ex. 7 to Def.'s Br.). The comments in that section state that "Hub has continuing problems maintaining a positive attitude, demonstrating an ability to compromise given the growth requirements of the office, and using good judgment, tact, and common sense working with market and office relationships. Hub has been challenging when dividing territory when new reps in the office begin" and "[s]ome conduct inside and outside the office has been detrimental to the company and a more ethical approach is needed." (*Id.*). When asked if it was correct that he had been challenging management's division of territory, Plaintiff testified "Absolutely." (Pl.'s Dep. Tr. at 130).

Sales representative Naile Lily Palaj ("Palaj") submitted an affidavit stating that she attended an exposition for insurance products in Grand Rapids, Michigan ("the Expo"), that was attended by many brokers and agents, in early March 2006. (*See* Palaj Affidavit, attached as Ex. 13 to Def.'s Br.) She states that she heard Plaintiff making negative comments about Defendant,

5

Covert, Ault, and her, to third parties at the Expo. (*Id.*). She also states that she reported what happened to Covert. (*Id.*).

Plaintiff admits that he made negative comments about the changes in the Detroit office to competitors at the Expo. (Pl.'s Dep. Tr. at 154-55). He further testified as follows:

> Q. At the Grand Rapids expo, did you have any conversations with brokers – brokers, now – about your situation with Mutual of Omaha?
> A. I don't recall.
> Q. Was John Snead of, I think, Aon?
> A. Yes.
> Q. Did you say anything about how you were doing at Mutual of Omaha?
> A. I probably did.
> Q. Did you tell him you were dissatisfied, had some problems, issues, weren't too happy?
> A. I don't specifically recall, but it's possible.
> Q. Anybody else beside John Snead – brokers?
> A. I don't remember. That was a year and a half ago. I don't remember.

(*Id*. at 159-60).

On or about March 16, 2006, Plaintiff was given a written notice and improvement plan that stated, in pertinent part:

> After the issuance of a verbal notice on November 16, 2005, Hub continues to demonstrate unprofessional behavior and communication.
>
> February 2006 - Hub challenged management on the expansion of office space, this action reduced Hub's office space by 4 feet.
> - Hub challenged management's decision on the recent territory changes, primarily over two brokers.
>
> In previous discussions with Hub, the importance of positively supporting management, territory assignments and processes/procedures within the Detroit office were communicated.
>
> On 9/12/06- Management stressed the importance of supporting new management in the Detroit Office, keeping an open mind with changes in management and territories as well as working through these changes in a positive manner.
>
> On November 16, 2005, Hub was issued a verbal notice, for continuing to display

6

> non-supportive behaviors. These behaviors included: asking brokers to intercede on his behalf in order to keep their block of business, challenging interactions with management regarding territory changes and dismissing management's request to proactively seek out 4th quarter business by manually computing over rides for the current block of business.

(Ex. 12 to Def.'s Br.). The notice also set forth management's performance expectations for Plaintiff in the future and advised that "[i]f additional occurrences of unprofessional behavior, communication and/or judgment are exhibited by Hub, further corrective action may occur up to and including involuntary termination of employment." (*Id.*).

Following that notice, two additional situations arose involving Plaintiff, one involving Kapnick Insurance Agency and involving a dispute over a quote for Melvindale - Northern Allen Park Schools. Both of those situations involved challenges over territory. Plaintiff was ultimately terminated by Defendant on or about June 2, 2006. (Pl.'s Dep. Tr. at 171-72).

## ANALYSIS

At the summary judgment stage, a plaintiff must adduce either direct or circumstantial evidence to prevail on his discrimination claim. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Here, Plaintiff does not contend that any direct evidence exists to support his claim of age discrimination. (*See* Pl.'s Response at 13). Thus, he must rely on circumstantial evidence.

A.  Can Plaintiff Establish A Prima Facie Case Of Age Discrimination Through Circumstantial Evidence?

Under the circumstantial evidence approach, a plaintiff must show the existence of facts which create an inference of discrimination under the familiar *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Both parties acknowledge that the *McDonnell Douglas* framework is applied to age discrimination claims brought under the ADEA and that Plaintiff bears the burden of establishing a prima facie

7

case.

To establish a prima facie case of age discrimination, a plaintiff must establish that: 1) plaintiff is a member of the protected class; 2) plaintiff suffered an adverse employment action; 3) plaintiff was qualified for the position; and 4) plaintiff was replaced by a younger worker. Alternatively, the fourth element can be satisfied if a plaintiff can show that for the same or similar conduct he was treated differently than similarly-situated non-protected employees. *Mitchell v. Toledo Hosp.*, 964 F.2d 527, 583 (6th Cir. 1992); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335-336 (6th Cir. 2003); *Tuttle v. Metropolitan Gov't of Nashville*, 474 F.3d 307, 320 (6th Cir. 2007). To be deemed "similarly situated," the individuals with whom the plaintiff seeks to compare his treatment must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

Here, there is no dispute that Plaintiff belongs to the protected classes at issue because he is over 40 years of age. Defendant also acknowledges that Plaintiff was subject to an adverse employment action because he was terminated. (*See* Def.'s Br. at 10). Defendant contends, however, that Plaintiff cannot establish the fourth[1] element of a prima facie case.

At the hearing, Plaintiff's counsel acknowledged that Plaintiff was not replaced by a younger employee. In addition, while Plaintiff's brief asserts his belief that non-protected

---

[1]Although Defendant's brief suggested that Plaintiff may not be able to establish that he was qualified for his position, Defense counsel acknowledged at the hearing that Plaintiff could establish the third element.

employees were treated differently,[2] in that they were assigned brokers that Plaintiff deemed desirable, Plaintiff has clearly failed to meet his burden of establishing the fourth element of his prima facie by showing that *for the same or similar conduct* he was treated differently than s*imilarly-situated* non-protected employees.

Plaintiff contends that Covert, Palaj, and Jerry Dengenais ("Dengenais") are the similarly-situated employees who were treated differently than Plaintiff for the same or similar conduct. However, Plaintiff has not submitted any record evidence to establish that these individuals are similarly situated to Plaintiff. Moreover, it is undisputed that Covert was Plaintiff's supervisor and was the individual who terminated Plaintiff. Therefore Covert cannot be considered a similarly situated employee. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d at 352 (the individuals with whom the plaintiff seeks to compare his treatment must have dealt with the same supervisor). In addition, Plaintiff has offered absolutely no evidence to establish that any of these three individuals engaged in the same or similar conduct that Plaintiff engaged in that led to his termination (*i.e.* challenging management's territory divisions, asking brokers to intercede on their behalf, etc.). Accordingly, the Court concludes that Plaintiff has failed to establish a prima facie case of age discrimination.

B.  Assuming *Arguendo* That Plaintiff Could Establish A Prima Facie Case, Can Plaintiff Demonstrate That The Legitimate, Non-Discriminatory Reason Offered By Defendant Is A Pretext For Age Discrimination?

---

[2]Plaintiff also appears to contend that the Court should consider the "credibility of the parties," and contends that Covert's credibility should be questioned by the Court because he admitted to not following company procedures, such as documenting certain amounts of his own vacation time, during his deposition. It is well established, however, that the Court is **not** to make credibility determinations in ruling on a Motion for Summary Judgment. *See, e.g., Keweenaw Bay Indian Community v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007).

Defendant also contends that even if Plaintiff could establish a prima facie case of age discrimination, Defendant has articulated a legitimate, non-discriminatory reason for his discharge and Plaintiff cannot establish that reason is a pretext for age discrimination.

Once a plaintiff establishes such a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the Plaintiff's discharge. Once a defendant articulates a nondiscriminatory reason for the challenged action, the plaintiff bears the burden to prove that the proffered explanation was a pretext for discrimination. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354 (6th Cir. 1998). In order to do so, the "plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994).

A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action by showing that the proffered reason 1) had no basis in fact, 2) did not actually motivate the defendant's challenged conduct, or 3) was insufficient to warrant the challenged conduct. *Wexler v. White Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003); *Manzer*, 29 F.3d at 1084. The first type of showing consists of evidence that the proffered bases for the termination never happened *(i.e.*, that they are factually false). With respect to the second kind of showing, "the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id.* The third showing consists of evidence that other employees, particularly those not in the protected class, were not fired even though they engaged in similar conduct. *Id.*

Defendant asserts the following as its legitimate, non-discriminatory reason for Plaintiff's discharge:

> Despite repeated discussions and warnings over a period of several months, beginning in September 2005, plaintiff objected to, criticized, resisted, and acted contrary to [Defendant's] efforts to grow the business of its Detroit office, by hiring additional sales representatives and dividing the sales territory (i.e., the entire State of Michigan and Toledo, Ohio) and the brokers in that territory.

(Def.'s Br. at 12). Defendant contends that Plaintiff cannot establish that its reason for terminating Plaintiff is a pretext for age discrimination.

Plaintiff appears to make two arguments with respect to pretext. First, Plaintiff asserts that Defendant has not demonstrated a legitimate reason for his termination and claims that Defendant has not identified any specific reasons for what it claims is "Plaintiff's misconduct."

Second, it appears that Plaintiff contends he can establish pretext by his deposition testimony wherein he "identified several fellow sales reps nationwide who, were either terminated as he was or forced to quit with Defendant's youth movement." (Pl.'s Response at 19). Plaintiff's brief, however, does not identify those other sales representatives nor does it discuss how they could be deemed similarly-situated to Plaintiff.

The Court concludes that Plaintiff has presented insufficient evidence to establish that Defendant's reason for terminating him was a pretext for age discrimination.

As stated above, there are three basic ways to show pretext: 1) present evidence to show that the proffered basis for the termination never happed (i.e., that it is factually false); 2) present circumstantial evidence of age discrimination, the sheer weight of which makes it more likely than not that the employer's reason is pretext; or 3) show that other employees, not in the protected class, engaged in similar conduct but were not fired.

Here, Plaintiff has not shown that the proffered basis for the termination never happened. To the contrary, *Plaintiff's own testimony* confirms that Plaintiff engaged in the very behaviors that caused Defendant to terminate him.

Plaintiff has also failed to present circumstantial evidence of age discrimination. In the cited portions of his deposition testimony, Plaintiff talks about his belief that other sales reps were terminated as part of a "youth movement." In that testimony, however, Plaintiff also admits that he did not know the ages of those individuals, did not know what the performance reviews of those individuals were like, and did not know details of how such individuals left the company. Moreover, those individuals worked outside of the Detroit office and therefore worked under supervisors other than Covert.

Finally, Plaintiff has not shown that other non-protected employees engaged in the same conduct but were not fired.

Accordingly, the Court concludes that Plaintiff has failed to submit sufficient evidence from which the jury may reasonably reject Defendant's stated reason for Plaintiff's termination.

## CONCLUSION & ORDER

For the reasons above, IT IS ORDERED that Defendant's Motion for Summary Judgment is GRANTED.

                                                  S/Sean F. Cox
                                                  Sean F. Cox
                                                  United States District Judge

Dated: April 22, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 22, 2008, by electronic and/or ordinary mail.

                                                  S/Jennifer Hernandez
                                                 Case Manager